UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SIGNATURE FINANCIAL LLC,
                        :            17 Civ. 6089

     Plaintiff,
                        :             OPINION

     - v -

NEIGHBORS GLOBAL HOLDINGS, LLC, NEC  :
LUFKIN EMERGENCY CENTER, LP, NEC    :
GREELEY EMERGENCY CENTER, LP, NEC   :
WEST WARWICK EMERGENCY CENTER, LP,  :
NEC LUBBOCK EMERGENCY CENTER, LP,   :
NEIGHBORS LEGACY HOLDINGS, INC.     :
f/k/a NEIGHBORS HEALTH SYSTEM, INC., :
NEIGHBORS HEALTH, LLC f/k/a        :
NEIGHBORS HEALTH SYSTEM, LLC, and   :
NEC BELLAIRE EMERGENCY CENTER, LP,  :
                        :

     Defendants.              :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

    This is a breach of contract action involving finance leases
for IT equipment and services extended by non-party All Points
Solutions, Inc. d/b/a 3i International ("3i") to Neighbors Global
Holdings, LLC ("Neighbors Global"), NEC Lufkin Emergency Center,
LP ("Lufkin"), NEC Greeley Emergency Center, LP ("Greeley"), NEC
West Warwick Emergency Center, LP ("West Warwick"), NEC Lubbock
Emergency Center, LP ("Lubbock"), Neighbors Legacy Holdings, Inc.
("Legacy Holdings"), Neighbors Health, LLC ("Neighbors Health"),
and NEC Bellaire Emergency Center, LP ("Bellaire") (collectively,
"defendants" or "Neighbors").

1

Plaintiff Signature Financial LLC ("Signature") - an assignee of 3i - brings a fifteen-count complaint arising from defendants' non-payment of rent. See Dkt. 1, Ex. A.

Defendants, on September 6, 2017, moved to dismiss plaintiff's complaint for lack of personal jurisdiction in New York and, in the alternative, to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404. See Dkt. 12. Upon due consideration, by bottom-line Order dated October 29, the Court denied defendants' motion in its entirety. See Dkt. 24. This Opinion sets forth the reasons for that ruling.

The pertinent allegations are as follows:

Signature, a wholly-owned subsidiary of Signature Bank, a New York-chartered bank, is a New York limited liability company with its principal place of business in New York. See Affidavit in Opposition of David McGowan ("McGowan Affidavit") ¶ 2, Dkt. 16.

Legacy Holdings is a Texas corporation with its principal place of business in Texas and is wholly-owned by nine non-party physicians who are residents of Texas. See Affidavit of Francine A. Elliot in Support of Defendants' Motion to Dismiss or Transfer ("Elliot Affidavit") ¶ 5, Dkt. 14.

Neighbors Global is a Delaware limited liability company with its principal place of business in Texas. Id. ¶ 4. Neighbors Global is a wholly-owned subsidiary of Legacy Holdings. Id. Neighbors Global owns Neighbors Health, a Texas limited liability company

with its principal place of business in Texas. Id. ¶ 7. Lufkin, Greeley, West Warwick, Lubbock, and Bellaire are all Texas limited liability companies with their principal places of business in Texas. Id. ¶ 6. They are each 99% owned by non-party Neighbors GP, LLC, a Texas limited liability company, and 1% owned by non-party NHS Emergency Centers, LLC, a Texas limited liability company, both of which are owned by Neighbors Health. Id. ¶ 6.

Neighbors Health and its parent companies collectively own and operate over thirty free-standing emergency medical centers in Texas, Rhode Island, and Colorado. See id. Ex. A, ¶ 40.

On or about September 14, 2015, Neighbors Health entered into a Master Equipment Lease Agreement ("Master Lease 960") with 3i, see Compl. ¶ 76, a Texas corporation with its principal place of business in Texas, see Elliot Affidavit ¶ 10. Pursuant to the terms of Master Lease 960, 3i leased to Neighbors Health (via separate Equipment Schedules) computers, servers, routers, copiers, and other IT equipment. See Compl. ¶ 76.

Master Lease 960 was amended on November 6, 2015 to name Legacy Holdings as lessee and Neighbors Health as co-lessee. See McGowan Affidavit ¶¶ 15-16.

In May 2016, pursuant to the terms of Master Lease 960, Legacy Holdings and Neighbors Health executed Equipment Schedule 41343964 with 3i, naming Bellaire as a co-lessee. Id. ¶ 18; id. Ex. J.

3

On or about July 15, 2016, Neighbors Global entered into a Master Equipment Lease Agreement with 3i ("Master Lease 501"), identical in all relevant respects to Master Lease 960. Id. ¶ 4. In September 2016, Neighbors Global executed four Equipment Schedules with 3i, one each with co-lessees Lufkin, Greeley, West Warwick, and Lubbock (Equipment Schedules 41413430, 41421639, 41421644, and 41421656, respectively). Id. ¶¶ 6-9; id. Exs. B-E.

Master Leases 501 and 960 (the "Leases") each provide that: "IF THE LESSOR OR ITS ASSIGNEE SHALL COMMENCE ANY JUDICIAL PROCEEDING IN RELATION TO ANY MATTER ARISING UNDER A LEASE, LESSEE IRREVOCABLY AGREES THAT ANY SUCH MATTER MAY BE ADJUDGED OR DETERMINED IN ANY COURT OR COURTS IN THE STATE OF LESSOR'S OR ITS ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS, OR ANY COURT OR COURTS IN THE LESSEE'S STATE OF RESIDENCE, OR IN ANY OTHER COURT HAVING JURSIDICTION OVER THE LESSEE OR THE LESSEE'S ASSETS, ALL AT THE SOLE DISCRETION OF THE LESSOR. LESSEE HEREBY IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURSIDICTION OF ANY SUCH COURT SO ELECTED BY LESSOR IN RELATION TO SUCH MATTERS." McGowan Affidavit, Exs. A, I (hereinafter, the "Lease") ¶ 25.

The Leases further include choice of law clauses, specifying New Jersey law, Lease ¶ 25, and provide that "Lessee's obligations to pay Rent in full when due are absolute and unconditional and shall not be subject to any abatement, reduction, set off, counterclaim, recoupment, defense or other right which Lessee may

4

have or assert against Lessor, the supplier of the Equipment or any other person or entity," id. ¶ 4. Additionally, the Leases contain assignment clauses stating: "Lessor may, without notifying the Lessee, sell, assign, or transfer this Lease and Lessor's rights to the Equipment. Lessee agrees that the new owner will have the same rights and benefits that Lessor has now under this Lease but not Lessor's obligations." Id. ¶ 21.

3i, on or about July 20, 2015, assigned to non-party Everbank Commercial Finance, Inc. ("Everbank") its rights and remedies in and to Master Lease 960 and Master Lease 501, as well as in and to Equipment Schedules 41343964, 41413430, 41421639, 41421644, and 41421656 ("the Equipment Schedules"). See McGowan Affidavit ¶¶ 10, 19; id. Ex. F.

Thereafter, pursuant to a Master Assignment Agreement by and between Everbank and Signature dated May 23, 2012, Everbank, on July 7, 2016, assigned to Signature its rights and remedies under Equipment Schedule 41343964 and, on October 13, 2016, Everbank further assigned its rights and remedies under Equipment Schedules 41413430, 41421639, 41421644, and 41421656. Id. ¶¶ 11, 20; id. Exs. G-H; see also Compl. ¶¶ 25, 39, 53, 67, 91.

In or around March 2017, Neighbors stopped making payments due under the Schedules. See Compl. ¶¶ 22, 40, 54, 68, 92.[1] On July

---

[1] In early 2017, Neighbors commenced an internal audit, which "revealed excessive and improper billing." See Elliot Affidavit ¶

7, Signature commenced the instant action for non-payment of rent in New York state court, and on August 11, Neighbors removed the case to this Court. See Notice of Removal, Dkt. 1.

## DISCUSSION

Defendants now move to dismiss plaintiff's complaint for lack of personal jurisdiction and, in the alternative, to transfer venue to the Southern District of Texas. See Dkt. 12.

### I.   Personal Jurisdiction

To meet its burden to demonstrate personal jurisdiction over Neighbors in New York, see Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010), Signature invokes Paragraph 25 of the Leases. As mentioned earlier, Paragraph 25 states, in relevant part, that "[i]f the lessor or its assignee shall commence any judicial proceeding in relation" to the lease, the "lessee irrevocably agrees that any such matter may be adjudged or determined" in, inter alia, "any court or courts in the state of

---

17. For example, though Neighbors was charged for certain IT services, "3i never provided Neighbors with any professional services." Id. Following the audit, "in early 2017," Neighbors "stopped making payments on certain disputed Agreements until an accounting and reconciliation could be completed." Id. ¶ 18. And, on June 28, 2017, Neighbors brought suit in Harris County Court in Texas against, inter alia, 3i, Everbank, and Signature alleging fraud, negligence, unjust enrichment, and breach of contract, seeking damages, fees, expenses, and a declaratory judgment regarding the rights and responsibilities of the parties. See Elliot Affidavit, Ex. 1.

lessor's or its assignee's principal place of business[.]"
Paragraph 25 further provides that the "lessee hereby irrevocably
submits generally and unconditionally to the jurisdiction of any
such court so elected by lessor." Lease ¶ 25.

Signature does not argue that this Court could or should find
personal jurisdiction over defendants in New York in the absence
of Paragraph 25. See, e.g., Dkts. 18, 20, 22. Signature does not
invoke New York's long-arm statute or argue that defendants have
purposefully availed themselves of the privilege of doing business
in New York. Signature does not contend that defendants have
sufficient "minimum contacts" with New York such that the
"maintenance of the suit does not offend traditional notions of
fair play and substantial justice," or that defendants have any
contacts with New York at all. Int'l Shoe Co. v. Washington, 326
U.S. 310, 316 (1945). Indeed, there appears to be no relationship
between defendants and the state of New York aside from the fact
that lessor's rights under the Leases (which defendants signed)
were assigned to Signature and Signature is based in New York.[2]
See Compl. ¶ 1. Thus, the maintenance of this suit in New York
turns entirely on the enforceability of Paragraph 25.

---

[2] Defendants represent that they do not maintain offices,
employees, property, bank accounts, mailing address, post office
boxes, telephone numbers, or registered agents in New York. See
Elliot Decl. ¶¶ 33-35. Nor have defendants "solicited business
from or targeted advertisements to" anyone in New York. Id. ¶ 36.

7

As a threshold matter, defendants contest the applicability of the Lease terms to the instant dispute. See Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint For Lack of Personal Jurisdiction, or in the Alternative, to Transfer Venue ("Def. Mem.") 14, Dkt. 13. Although defendants concede that they signed the Leases and that this suit arises out of their non-payment of rent, they argue that only the Equipment Schedules, and not the Master Leases, have been assigned to Signature. Id.

While this may be true, the Schedules expressly incorporate the terms and conditions of the Leases. See McGowan Affidavit, Exs. B, C, D, E, and J ("All the terms and conditions of the Master Lease are incorporated herein and made a part hereof."). Thus Paragraph 25 plainly applies to suits arising under the Schedules.

Defendants further contend that Paragraph 25 applies only "at the sole discretion of the Lessor" – in other words, at the sole discretion of 3i. See Def. Mem. 14. But this argument also fails. The Lease clearly provides that 3i has the right to assign the Schedules and that, upon assignment, "the new owner will have the same rights and benefits" as 3i. Lease ¶ 21. Thus, Everbank obtained all of 3i's rights when 3i assigned the Leases and Schedules to Everbank, and Signature obtained all of Everbank's rights when Everbank assigned the Schedules to Signature.

Defendants find special significance in the fact that Paragraph 25 mentions "lessor or its assignee" in contradistinction to "lessors" and grants the right to select a forum only to "lessor." See Reply Brief in Further Support of Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue ("Def. Reply") at 2-3, Dkt. 19. "At the sole discretion of lessor," defendants argue, must simply refer to 3i, else why would the contract specify "lessor or its assignee" two times in the first half of the sentence? Likewise, defendants argue, the next sentence requiring the lessee to submit to the jurisdiction of any court "so elected by lessor" must mean 3i and not its assignees.

This clever argument, however, is also unavailing. The reason "lessor" in the phrase "at the sole discretion of lessor" means Signature is that the phrase names the holder of a legal right (here a right belonging to "lessor") and Paragraph 21 empowers "lessor" to assign its rights to a third-party. By contrast, the phrase "lessor or its assignee" does not name the holder of a legal right, it merely describes a right that is being conferred on "lessor," namely, the right to choose fora for suit.

Other courts confronted with the same or nearly the same provision have also concluded that it allows assignees to select their principal place of a business as the forum for litigation. See, e.g., Wells Fargo Fin. Leasing, Inc. v. NCH Healthcare Sys.,

9

Inc., 756 F. Supp. 2d 1086, 1096-97 (S.D. Iowa 2010); U.S. Bank Nat. Ass'n v. San Bernardino Pub. Employees' Ass'n, No. 13 Civ. 2476 (JNE) (JJG), 2013 WL 6243946, at *3 (D. Minn. Dec. 3, 2013) (allowing an assignee to invoke a clause stating that "[i]f the Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, [the Lessee agrees] any such matter may be adjudged or determined in any court or courts in the state of the Lessor or its Assignee's principal place of business . . . all at the sole election of the Lessor").

Moreover, defendants' interpretation would render the first half of Paragraph 25 meaningless, as defendants do not explain how an assignee like Signature might commence a judicial proceeding, while another party, 3i, exercised the right to choose the forum. See Hardy ex rel. Dowdell v. Abdul-Martin, 965 A.2d 1165, 1169-70 (N.J. 2009) (noting that under New Jersey law a contract should not be read so as to render a term meaningless).

Additionally, defendants argue that Signature has not adequately demonstrated that it is the valid assignee of the Schedules because it has not produced any documents showing that 3i assigned the Leases to Everbank. See Def. Reply at 3. However, even though Signature ultimately "bears the burden of establishing personal jurisdiction over [defendants] by a preponderance of the evidence," at the outset Signature "need only make a prima facie showing that jurisdiction exists," Ball v. Metallurgie Hoboken-

10

Overpelt, S.A., 902 F.2d 194, 196 (2d Cir. 1990) (citation omitted), and in the absence of an evidentiary hearing or jurisdictional discovery, "the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff[,]" UTC Fire & Sec. Americans Corp., 844 F. Supp. 2d 366, 370 (S.D.N.Y. 2012) (quotation omitted). Signature here has submitted assignment agreements between 3i and Everbank and between Everbank and Signature. See McGowan Affidavit, Exs. F, G. Thus, Signature has plausibly alleged that it is the assignee of the Schedules, see Compl. ¶ 24-25, 38-39, 52-53, 66-67, 90-91, and, at this stage, the Court will apply the Lease terms to the instant dispute for purposes of deciding defendants' motion.

Next, defendants argue that, even if the Lease terms are applicable, Paragraph 25 is unenforceable. Defendants do not specify, however, which law they believe applies to this question.

Numerous federal courts, including courts in this Circuit, have applied federal law to the question of whether a forum selection clause is enforceable in federal court. See, e.g., Gordian Group, LLC v. Syringa Exploration, Inc., 168 F. Supp. 3d 575, 581-83 (S.D.N.Y. 2016) (applying federal law to the question of whether a clause is enforceable in deciding a motion to dismiss for lack of personal jurisdiction); Seneca Ins. Co. v. Henrietta Oil Co., No. 02 Civ. 3535 (DC), 2003 WL 255317, at *3-4 (S.D.N.Y. Feb. 4, 2003) (same).

11

Moreover, the Supreme Court established that federal law applies to the question of whether such clauses are enforceable for the purposes of evaluating motions to transfer pursuant to § 1404(a). Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988) (holding that "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause" and transfer venue). See also Martinez v. Bloomberg LP, 740 F.3d 211, 217-18 (2d Cir. 2014) (holding that "[t]he overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law," and that therefore federal law applies to the question of whether venue is proper pursuant to Federal Rule of Civil Procedure 12(b)(3) even in cases where a choice of law clause specifies the law of another jurisdiction).

To be sure, neither the Supreme Court, nor the Second Circuit, have addressed whether federal law should apply to the question of whether these clauses are enforceable when they are being used, as Judge Posner put it, "in an attempt to obtain personal jurisdiction that would otherwise be unobtainable." IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc., 437 F.3d 606, 609 (7th Cir. 2006) (noting that other "courts, including our own, have reserved the question whether federal law governs other than in the specific context exemplified by the Stewart case"). Aside from Aliano Bros. (which hedged and determined that the clause was enforceable under

12

both state and federal law), only the Sixth Circuit appears to have directly addressed this issue. Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303, 308 (6th Cir. 2007) (holding that, as federal law would enforce the clause and Ohio law would not, "Ohio law should apply to the interpretation of this forum selection clause. To apply federal law would undercut both aims of the Erie test — it would encourage forum shopping by providing differing outcomes in federal and state court").

This Court adopts the Sixth Circuit's reasoning, which is consistent with the clear rule in the Second Circuit that, "[i]n diversity cases, the issue of personal jurisdiction is governed by the law of the forum state." D.H. Blair & Co. Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006). See also Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

The decisive question, then, is whether Paragraph 25 is enforceable under New York law. The Court finds that it is.

In New York, "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract. Such clauses are prima facie valid and enforceable unless shown by the resisting party to be unreasonable[.]" Brooke Grp. Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (1996) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)); see also Koob v. IDS Fin. Servs., Inc., 629 N.Y.S.2d 426, 433 (App. Div. 1995) (citing Matter of Smith Barney

13

v. Luckie, 85 N.Y.2d 193, 201 (App. Div. 1995) ("It is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation").

New York courts have specifically found that forum selection clauses can be relied upon to establish personal jurisdiction over out-of-state defendants who otherwise would not be liable to suit in New York. See, e.g., State Bank of India v. Taj Lanka Hotels Ltd., 686 N.Y.S.2d 44, 44 (App. Div. 1999) (affirming denial of defendant's motion to dismiss for lack of jurisdiction on the grounds that defendant consented to jurisdiction). However, a party can overcome the presumption of enforceability by showing that a clause is "'unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching,' or 'that a trial in the selected forum would be so gravely difficult that the [resisting party] would, for all practical purposes, be deprived of [their] day in court.'" Best Cheese Corp. v. All-Ways Forwarding Int'l. Inc., 24 A.D.3d 580, 581 (N.Y. App. Div. 2005) (quoting Premium Risk Group v. Legion Ins. Co., 294 A.D.2d 345, 346 (N.Y. App. Div. 2002)).

Defendants here argue that Paragraph 25 is invalid, among other things, because it was "procured through fraud on the part of 3i and/or Everbank" and, under New York law, provisions so procured "will be set aside." See Def. Reply 4 (citing Studebaker-Worthington Leasing, Corp. v. New Concepts Realty, Inc., 887

14

N.Y.S.2d 752, 757 (App. Div. 2009) ("New Concepts II"). But under "the prevailing rule" in New York, "to invalidate a forum selection clause on the ground of fraud . . . the fraud alleged must be specific to the jurisdictional provision itself." Studebaker-Worthington Leasing, Corp. v. New Concepts Realty, Inc., 847 N.Y.S.2d 899 (Dist. Ct. 2007) ("New Concepts I") (citing British West Indies Guaranty Trust Co., Ltd. v. Banque Internationale A Luxembourg, 172 A.D.2d 234 (N.Y. App. Div. 1991); Zurich Insurance Company v. R. Electric, Inc., 5 A.D.3d 338 (N.Y. App. Div. 2004); Hunt v. Landers, 309 A.D.2d 900 (N.Y. App. Div. 2003); Hirschman v. National Textbook Co., 584 N.Y.S.2d 199 (App. Div. 1992)).

The only exception to this rule is where the fraud so pervades the agreement as to render it void ab initio. DeSola Group v. Coors Brewing Co., 199 A.D.2d 141, 141-42 (N.Y. 1993) (citing Telford v. Metro. Life Ins. Co., 223 A.D. 175, 177 (N.Y. App. Div. 1928), aff'd, 250 N.Y. 528 (1928)). As defendants, here, do not argue that the jurisdictional clauses themselves were procured through fraud, nor have they shown that the agreements were void ab initio, the Court, at this stage, declines to find Paragraph 25 invalid due to fraud.

Defendants further argue that enforcement of Paragraph 25 would be unreasonable, unjust, and in contravention of public policy. See Defendants' Supplemental Brief in Further Support of Motion to Dismiss ("Def. Supp.") at 3, Dkt. 21. Specifically, they

15

contend that "New York courts have repeatedly and consistently held that forum selection clauses like the ones in the Master Leases are void and unenforceable because they lack specificity and predictability, and compel a party to be subject to suit in an unknown forum." Id.

But Paragraph 25 is not what one might call a "full" forum selection clause - a contractual term governing where all parties to a contract may bring suit. A full forum selection clause would bind Neighbors and Signature to sue only in forums specified in the contract and would therefore allow either party to oust jurisdiction if the other sued in a non-selected forum. This was the type of clause at issue in M/S Bremen. See M/S Bremen, 407 U.S. at 13-14 ("Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the Bremen or Unterweser might happen to be found. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting."). More generally, in New York, as under federal law, full forum selection clauses are enforced "because they provide certainty and predictability in the resolution of disputes." Boss v. Am. Express Fin. Advisors, Inc., 6 N.Y.3d 242, 247 (2006) (citing Brooke Grp., 87 N.Y.2d at 534).

16

Paragraph 25, unlike a full forum selection clause, permits Neighbors to bring a case arising under the lease in any forum that would otherwise be proper pursuant to 28 U.S.C. § 1391 or in any state court where Neighbors could sustain personal jurisdiction over Signature. In other words, Paragraph 25 does not empower Signature to oust jurisdiction in favor of New York in a hypothetical suit brought by Neighbors in another state. Paragraph 25, therefore, is best understood as a "consent to jurisdiction" clause – a clause that does not specify one forum where all suits must be brought, but rather requires one or both parties to abandon jurisdictional defenses when sued by the other party in certain forums.

One type of consent to jurisdiction clause is known as a permissive venue clause. These clauses provide a non-exclusive forum for dispute resolution by specifying, for example, that the parties "agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder." See Orix Credit Alliance, Inc. v. Mid-South Materials Corp., 816 F. Supp. 230, 231 (1993) (examining a contract with this term). This term ensures that some forum is available to resolve a dispute, without precluding the parties from arguing in court that other forums would be more appropriate.

Paragraph 25, by contrast, is a mandatory consent to jurisdiction clause - it does not establish one possible forum for

the resolution of disputes arising under the contract — it guarantees to one party the right to bring cases in the forum of its choice. Thus, it restricts Neighbors from moving to dismiss or transfer venue in a case commenced by "lessor or its assignee" in states where defendants would otherwise already be subject to suit (e.g. their state of residence or the state in which the lease equipment is located) or in the state where Signature's principal place of business is located. And, though the clause allows Signature to choose between these options, this does not make it "permissive," as defendants argue, see Def. Reply at 7-9, because it still requires the lessee to submit to jurisdiction in whichever forum Signature chooses.

Mandatory consent to jurisdiction clauses serve different purposes from full forum selection clauses. New York courts enforce mandatory consent to jurisdiction clauses because they help "avoid litigation over personal jurisdiction and disputes over the application of the long-arm statute[.]" National Union Fire Insurance Company of Pittsburg, P.A. v. Williams, 223 A.D.2d 395, 397-398 (N.Y. App. Div. 1996).

Consistent with the different purpose, New York courts, rather than require that consent to jurisdiction clauses provide the same sort of "certainty and predictability" as full forum selection clauses (which can be used to oust a plaintiff from his or her chosen forum) require only that consent to jurisdiction

18

clauses be "clear and specific." New Concepts I, 847 N.Y.S.2d at 899. Thus, consent to jurisdiction clauses that force one party to submit to suit anywhere are unenforceable. See A.I. Credit Corp. v. Liebman, 791 F. Supp. 427, 429 (S.D.N.Y. 1992) (distinguishing between clauses that define the proper forum based on known but mutable facts and those in which parties "consent to be sued anywhere in the world"); Conopco, Inc. v. PARS Ice Cream Co., No. 13 Civ. 1083 (JSR), 2013 WL 5549614, at *5-6 (S.D.N.Y. Sept. 26, 2013) (declining to enforce a clause requiring defendant to waive jurisdictional and venue defenses); Brooke Grp., 87 N.Y.2d at 534-35 (finding that a clause requiring one party to "submit to the jurisdiction of a Court of competent jurisdiction within the United States" did not require defendants to litigate plaintiff's claims in New York).

The question thus presented is whether, because Paragraph 25 is also a "floating" mandatory consent to jurisdiction clause – i.e. assignments change where Neighbors consents to being sued – it is therefore too "unclear" and non-specific to be enforced.

The short answer is no. Floating mandatory consent to jurisdiction clauses are enforced in New York because they facilitate the loan assignment market by allowing lenders to assign loans to other lenders and still sue borrowers for non-payment of rent in their home jurisdictions. The purpose of the clauses is not to surprise or inconvenience defendants, but to lower the cost

of servicing lease portfolios. Lenders with large books of leases bring many suits for non-payment, and they can manage these portfolios more efficiently if they can bring all such suits in one place.

By enforcing these clauses, New York courts lower borrowing costs for lessees by expanding the pool of capital available to finance leases. Were New York courts to invalidate these clauses, financial institutions in New York might refrain from buying leases extended in other states, such as Texas, reducing access to capital for individuals and businesses in these areas. The negative effects may be particularly pronounced in those areas with lower concentrations of banking assets.

Thus, as Judge Posner again explained, although clauses like Paragraph 25 favor one party, the disfavored party was likely "compensated in advance" for conferring a benefit on the favored party through the other terms of the contract such as the price. As a result, were the Court to ignore the clause defendants would, as Judge Posner put it, "'reap a windfall.'" Aliano Bros., 437 F.3d at 610 (quoting Nw. Nat. Ins. Co. v. Donovan, 916 F.2d 372, 378 (7th Cir. 1990)).

New York courts do, however, recognize that the use of mandatory consent to jurisdiction clauses can be abused in certain circumstances, and where, as applied, they are manifestly unfair to the debtor, New York courts decline to enforce them.

For example, New York courts have dismissed a series of cases arising out of a nationwide fraud perpetrated by a defunct firm called NorVergence. In these cases, the courts gave no effect to mandatory consent to jurisdiction provisions where the defendants were small, out-of-state, local businesses ill-equipped to litigate in New York. See, e.g., New Concepts II, 887 N.Y.S.2d at 756-57 (finding that the defendant "is a small, privately held business [based in Colorado] with gross revenues of between $150,000 and $200,000 and three employees," which "made a substantial showing, which was not contradicted by plaintiff, that they were tricked . . . into signing what was represented to be a non-binding agreement, which, in reality, was an unconscionably one-sided contract from which they derived no benefits"); Sterling Nat'l Bank v. David Stanley Consultants, LLC, No. 103573/2005 (N.Y. Dist. Ct. Nov. 16, 2005) (dismissing a NorVergence case involving a fraudulently induced 60-month lease sold to a West Virginia firm for $559.41 per month); Sterling Nat'l Bank v. Chang, 809 N.Y.S.2d 484, 484 (App. Div. 2005) (permitting an affirmative defense to personal jurisdiction in a NorVergence case where plaintiff failed to submit an affidavit regarding its knowledge or notice of fraud-in-the-inducement alleged by defendant).

But even in the NorVergence cases, where the parties were sophisticated businesses, New York courts enforced the mandatory consent to jurisdiction clauses. For example, the First Appellate

21

Division enforced a nearly identical clause to the one here in a published, unanimous decision issued in 2006. Sterling Nat. Bank as Assignee of NorVergence, Inc. v. Eastern Shipping Worldwide, Inc., 35 A.D.3d 222, 223 (N.Y. App. Div. 2006) (finding that the clause "clearly provides that if the lease has been assigned . . . then the venue of any legal action shall be in the state where the principal headquarters of the assignee is located").

In another published opinion, a court in Nassau County, New York, applied Eastern Shipping Worldwide and enforced the same clause against a Colorado defendant under an agreement the rights to which had been assigned to a New York plaintiff.[3] See New Concepts I, 847 N.Y.S.2d 899. New Concepts, in fact, made many of the same arguments as Neighbors here (i.e. that it had no contacts with New York, that there was no relationship between New York and the underlying dispute, that it had no notice of where it might be sued). Id. Nonetheless, the Court concluded that the clause was "clear and specific enough to be enforceable." Id. (collecting cases and citing, inter alia, Preferred Capital, Inc. v. Assocs. in Urology, 453 F.3d 718, 723 (6th Cir. 2006)).

---

[3] The court also conducted a survey of New York cases in this area finding that "the majority of nisi prius decisions rendered on the issue invalidated the clause, while the appellate decisions around the country, both state and federal, by and large favor the clause's validity." New Concepts I, 847 N.Y.S.2d 899.

Neighbors is a nation-wide conglomerate with over thirty locations in Colorado, Texas, and Rhode Island. See Elliot Affidavit, Ex. 1 ¶ 40. Their Chief Financial Officer signed the Leases. Company executives likely knew that the Leases were going to be assigned to a bank headquartered out of state, as the Leases include assignment clauses and clauses specifying New Jersey law.

Paragraph 25 of the Leases is specific and clear; it put defendants "on notice at the time of contracting that they were assuming the risk of litigating in a less convenient forum." IFC Credit Corp. v. Rieker Shoe Corp., 881 N.E.2d 382, 391 (Ill. App. Div. 2007). As discussed, "[t]here are legitimate business reasons for this type of forum selection clause, which facilitates the marketability of commercial paper because financial institutions can depend on selling it freely." Id.

Neighbors, it is fair to say, agreed to litigate this case in the lessor or its assignee's principal place of business, and New York courts enforce such bargains when they are made between sophisticated parties and where such enforcement would not deprive the resisting party of its day in court. As Neighbors appears fully capable of defending this suit in New York, the Court declines to invalidate Paragraph 25 and therefore denies defendants' motion to dismiss plaintiff's complaint.

**II. Venue**

23

Defendants move the Court in the alternative to transfer this case to the Southern District of Texas. See Def. Mem. at 16.

For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. See 28 U.S.C. § 1404(a). The purpose of § 1404 "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citation omitted).

Defendants bear the burden of demonstrating by "clear and convincing evidence" that a case should be transferred, New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010), and decisions when to transfer venue "lie within the broad discretion of the district court and are determined upon notices of convenience and fairness on a case-by-case basis," In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

A "motion to transfer venue requires a two-step inquiry: the court must determine, first whether the action sought to be transferred is one that might have been brought in the transferee court, and, second, whether transfer is appropriate in light of the convenience of parties and witnesses and the interest of justice." P.E.A. Films, Inc. v. Metro-Goldwyn-Mayer, Inc., No. 14

Civ. 7263 (JSR), 2014 WL 6769377, at *1 (S.D.N.Y. 2014) (internal quotations omitted).

The second prong of the inquiry requires that the Court consider nine factors: "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Id. at *2 (quotation omitted).

"[A] court evaluating a . . . § 1404(a) motion to transfer based on a forum-selection clause[,]" however, "should not consider arguments about the parties' private interests" as the parties have "waive[d] the right to challenge the preselected forum as inconvenient." ErGo Media Capital, LLC v. Bluemner, No. 15 Civ. 1377 (LGS), 2015 WL 6442252, at *5 (S.D.N.Y. Oct. 23, 2015) (quoting Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court, 134 S. Ct. 568, 581 (2013)); Atl. Marine, 134 S. Ct. at 581 (holding that when "parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation").

Before considering the various aforementioned factors, therefore, the Court first must determine whether to give effect to Paragraph 25.

Unlike the question of whether to give effect to Paragraph 25 for purposes of deciding defendants' 12(b)(2) motion, this question is governed by federal law. See Martinez, 740 F.3d at 220 (holding that questions "'of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature,' and therefore should be governed by federal law") (quoting Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990) (per curiam)); Stewart, 487 U.S. at 32 (holding that "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause").

Under federal law, forum selection clauses are prima facie valid and regularly enforced. See D.H. Blair & Co, 462 F.3d at 103; Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964) (noting that "it is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court"). However, under certain circumstances, a federal court may decline to enforce a forum selection clause if, for example, "trial in the contractual forum [would] be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court," M/S Bremen, 407 U.S. at

26

18, or "if enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision," id. at 15 (citation omitted).

Courts in this Circuit apply a multi-factor test to determine whether to enforce a forum selection clause, weighing "'(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any . . . dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause[.]'" Starkey v. G Adventures, Inc., 796 F.3d 193, 196 (2d Cir. 2015) (quoting Martinez, 740 F.3d at 217). Defendants dispute only prong (2), contending that Paragraph 25 here is "permissive" not "mandatory."

It is once again critical to differentiate between full forum selection clauses and consent to jurisdiction clauses. Under prong (2), where the movant is seeking to oust jurisdiction, it must be pursuant to a mandatory provision actually barring the plaintiff from bringing suit in the forum. Paragraph 25 here, however, is not a full forum selection clause. Instead, it requires defendants, the party opposing enforcement, to submit to jurisdiction in New York. The clause, therefore, has "mandatory force" for the purposes of prong (2), and is presumptively enforceable. Id. ("'If the forum clause was communicated to the resisting party, has mandatory force

and covers the claims and parties involved in the dispute, it is presumptively enforceable'") (quoting Martinez, 740 F.3d at 217).

"'A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting Martinez, 740 F.3d at 217). The rule in federal court is the same as the rule in New York: that the fraud alleged must be so great as to vitiate the entire agreement or that it must relate to the inclusion of the clause itself. See Jamco Prods., Inc. v. TopsyTail Co., Inc., No. 93 Civ. 3245 (MGC), 1993 WL 524916, at *2 (S.D.N.Y. Dec. 14, 1993). As discussed earlier, defendants make no such allegations here.

Defendants also argue that enforcement of Paragraph 25 here would be unreasonable. They cite four district court cases in support of their argument: Nat'l City Commercial Capital Corp. v. Gateway Pac. Contractors, Inc., No. 04 Civ. 669 (SJD), 2007 WL 3232440, at *5 (S.D. Ohio Oct. 31, 2007) (applying the Sixth Circuit's holding in Sarasota Kennel to a NorVergence lease); Lyon Fin. Servs., Inc. v. Reno Sparks Ass'n of Realtors, No. 03 Civ. 5539 (JRT) (FLN), 2004 WL 234405, at *1-2 (D. Minn. Feb. 4, 2004) (transferring venue to another district despite forum selection clause); In re NorVergence, Inc., 424 B.R. 663, 711 (Bankr. D.N.J. 2010) (applying a Third Circuit test that considers the public policy of the forum state and concluding that a clause like the

28

one here violated New Jersey public policy);[4] and Gordian Grp., LLC v. Syringa Expl., Inc., 168 F. Supp. 3d 575, 581-82 (S.D.N.Y. 2016) (declining to enforce a forum selection clause because it does not provide sufficient notice as to the forum being selected).

All of these cases are inapposite. Nat'l City Commercial involves the application of Ohio law. The court in Lyon Fin. Servs. weighs the private interest factors in favor of transfer, in effect invalidating the clause. In re NorVergence applies a Third Circuit test that takes into account New Jersey public policy, which differs from both New York and federal policy. And, Gordian explicitly notes that clauses like Paragraph 25 are enforceable.[5]

Defendants' arguments that the clause is unenforceable because of uncertainty are of no moment as the clause does not

---

[4] "A forum selection clause that does not provide a party with adequate notice may be considered unreasonable and therefore invalid under New Jersey law." In re NorVergence, 424 B.R. at 710 (citing Copelco Capital, Inc. v. Shapiro, 750 A.2d 773, 775-776 (N.J. App. Div. 2000) where a New Jersey Court "declined to enforce a forum selection clause in which litigation was agreed to take place 'in the state in which our or our assignee's principal corporate offices are located.'").

[5] Defendants also cite a Southern District case from 2003, Seneca, 2003 WL 255317, at *3-4. In Seneca, Judge Chin found that "enforcement of the forum selection clause would be 'unjust'" where all "the significant contacts were with Texas" and the only "contact with New York" is that plaintiff is headquartered here. Judge Chin reasoned that defendants "could not have knowingly consented to jurisdiction in New York because . . . the application form that [defendant] signed did not contain a forum selection clause" only the policy, which defendant received weeks later included such a clause. Id. But unlike in Seneca, here, defendants are sophisticated businesspeople who were on notice of the contractual terms when they executed the Leases.

29

limit defendants' ability to bring suit in a forum of their choosing. Paragraph 25, as mentioned earlier, is designed to facilitate the assignment market and expand the supply of credit to areas around the country by making it easier for creditors to recover when debtors default. See Aliano Bros., 437 F.3d at 612-13. Thus, it "further[s] vital interests of the justice system, including judicial economy and efficiency[.]" Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 722 (2d Cir. 2013) (quotation omitted).

Other circuits have enforced substantially similar clauses in similar circumstances, as have numerous district courts. See, e.g., Assocs. in Urology, 453 F.3d at 723-24 (holding that where defendant is "a commercial entity" it "should have realized the implications of agreeing to the inclusion of a forum selection clause that did not identify an assignee or specified jurisdiction" and, having "failed to object to the terms of the forum selection clause" though defendant "may be dissatisfied with the litigation forum, it is not our [the Court's] task to save Defendant from the consequences of an agreement it freely entered into"); Aliano Bros., 437 F.3d at 612-13; Popular Leasing USA, Inc. v. Terra Excavating, Inc., No. 4:04 Civ. 1625 (CAS), 2005 WL 1523950, at *4-5 (E.D. Mo. June 28, 2005); Liebman, 791 F. Supp. at 429 (S.D.N.Y. 1992) (finding that "Defendant did not consent to be sued anywhere in the world, but only in the jurisdiction of the

30

partnership's principal place of business or in the jurisdiction of a transferee's domicile or principal place of business"); A.I. Credit Corp. v. Djiounas, No. 91 Civ. 6234 (JSM), 1992 WL 131783, at *1 (S.D.N.Y. June 2, 1992); U.S. Bank Nat. Ass'n v. San Bernardino Pub. Employees' Ass'n, No. 13 Civ. 2476 (JNE) (JJG), 2013 WL 6243946, at *3 (D. Minn. Dec. 3, 2013).

As Paragraph 25 is enforceable, defendants' arguments regarding the private interest transfer factors must be disregarded (e.g. that Texas is the location of the critical witnesses, the relevant books and records, and the final delivery confirmations, and that venue would be more proper in Texas given both parties' presence in Texas, see Def. Mem. 18-22). Instead, the Court must weigh all of the private interest factors in favor of New York, and consider arguments only regarding the relative balance of the public interest factors. See Atl. Marine, 134 S. Ct. at 581 ("[a] court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum").

Defendants point to two public interest factors that they argue weigh in their favor. One is in ensuring that health care facilities located in Texas remain operative and uninterrupted while this dispute is resolved. See Def. Reply at 10. The other is judicial efficiency. See Def. Mem. at 22. Plaintiff cites New York's interest in resolving disputes arising out of leases assigned to banks in New York, as New York is a center of national

and international banking, as well as the need for uniformity and certainty in the enforceability of mandatory consent to jurisdiction clauses. See Plaintiff Signature Financial, LLC's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue ("Pl. Mem.") at 13, Dkt. 18.

None of these factors dramatically outweighs the other factors. Thus, on any balancing, taking into account the mandatory force of Paragraph 25 of the Leases, plaintiff's choice of forum must prevail. See Gross v. British Broad. Corp., 386 F.3d 224, 230 (2d Cir. 2004) (plaintiff's choice of forum is "presumptively entitled to substantial deference" and should not be disturbed "unless the balance is strongly in favor of" defendant's motion to transfer) (quotations omitted).

**III. CONCLUSION**

For the reasons set forth above, the Court, on October 29, 2017, denied defendants' motion to dismiss plaintiff's complaint and defendants' motion to transfer venue.

Dated:  New York, NY
        December 19, 2017

JED S. RAKOFF, U.S.D.J.

32