UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
SIGNATURE FINANCIAL LLC,                :

                                        :        17 Civ. 6089

        Plaintiff,                      :

                                        :        OPINION AND ORDER
        - v -                           :

                                        :
NEIGHBORS GLOBAL HOLDINGS, LLC, NEC     :
LUFKIN EMERGENCY CENTER, LP, NEC        :
GREELEY EMERGENCY CENTER, LP, NEC       :
WEST WARWICK EMERGENCY CENTER, LP,      :
NEC LUBBOCK EMERGENCY CENTER, LP,       :
NEIGHBORS LEGACY HOLDINGS, INC.         :
f/k/a NEIGHBORS HEALTH SYSTEM, INC.,    :
NEIGHBORS HEALTH, LLC f/k/a             :
NEIGHBORS HEALTH SYSTEM, LLC, and       :
NEC BELLAIRE EMERGENCY CENTER, LP,      :

                                        :
        Defendants.                     :
-------------------------------------x



JED S. RAKOFF, U.S.D.J.

        Before the Court in the above-captioned case is the motion

for summary judgment of plaintiff Signature Financial LLC

("Signature"). See Dkt. 31. Signature seeks the amounts due and

owing under five equipment leases, possession of the equipment,

and reimbursement of costs and fees. See Plaintiff Signature

Financial LLC's Memorandum of Law in Support of its Motion for

Summary Judgment ("Pl. Mem."), Dkt. 31-43. Defendants oppose,

arguing that there are genuine issues of material fact regarding

(1) whether plaintiff has the authority to enforce the leases at

issue, (2) whether plaintiff has established all of the elements

of breach of contract, (3) whether defendants' affirmative

1

defenses could prevail at trial; and (4) the amount of damages plaintiff is entitled to recover if the leases are enforceable. See Defendants' Memorandum of Law in Opposition to Signature Financial LLC's Motion for Summary Judgment and Memorandum of Law in Support ("Def. Opp.") at 1-4, Dkt. 32.

For the reasons set forth below, the Court grants Signature's motion in full.

The pertinent facts, either undisputed, or, where disputed, taken most favorably to defendants, are as follows:

Signature is a New York limited liability company, the sole member of which is a New York resident. See Local Rule 56.1 Statement of Undisputed Material Facts ("Pl. 56.1 St.") ¶ 1, Dkt. 31-42; Local Rule 56.1 Response to Statement of Undisputed Material Facts and Statement of Genuine Issues of Material Facts ("Def. 56.1 St.") ¶ 1, Dkt. 32-1.

Defendants Neighbors Global Holdings, LLC ("Neighbors Global"), NEC Lufkin Emergency Center, LP ("Lufkin"), NEC Greeley Emergency Center, LP ("Greeley"), NEC West Warwick Emergency Center, LP ("West Warwick"), NEC Lubbock Emergency Center, LP ("Lubbock"), NEC Bellaire Emergency Center, LP ("Bellaire"), Neighbors Legacy Holdings, Inc. ("Legacy Holdings"), and Neighbors Health, LLC ("Neighbors Health") (collectively, "Neighbors") are either organized pursuant to the laws of the State of Texas or, in the case of Neighbors Global, the State of Delaware. Id. ¶¶ 2-9.

2

On or about September 14, 2015, Neighbors Health, as Lessee, and non-party All Points Solution Inc. d/b/a 3i International ("3i"), as Lessor, entered into a Master Equipment Lease Agreement numbered 41261960 ("Master Lease 960"). Id. ¶ 16. Thereafter, on or about May 1, 2016 and pursuant to the terms of Master Lease 960, Neighbors Health, Legacy Holdings, and Bellaire as Co-Lessees, and 3i, as Lessor, entered into Equipment Schedule numbered 41343964 (the "Bellaire Schedule"). Id. ¶ 18.

On or about July 15, 2016, Neighbors Global, as Lessee, and 3i, as Lessor, entered into a Master Equipment Lease Agreement numbered 41395501 ("Master Lease 501"). Id. ¶ 11. Pursuant to the terms of Master Lease 501, the following additional agreements were made: on or about September 1, 2016, Neighbors Global and Lufkin, as Co-Lessees, and 3i, as Lessor, entered into an Equipment Schedule numbered 41413430 ("Lufkin Schedule"), id. ¶ 12; on or about September 15, 2016, Neighbors Global and Greeley, as Co-Lessees, and 3i, as Lessor, entered into an Equipment Schedule numbered 41421639 ("Greeley Schedule"), id. ¶ 13; on or about September 15, 2016, Neighbors Global and West Warwick, as Co-Lessees, and 3i, as Lessor, entered into an Equipment Schedule numbered 41421644 ("West Warwick Schedule"), id. ¶ 14; and on or about September 15, 2016, Neighbors Global and Lubbock, as Co-Lessees, and 3i, as Lessor, entered into an Equipment Schedule numbered 41421656 ("Lubbock Schedule"), id. ¶ 15.

Thereafter, pursuant to the terms of a Master Purchase Agreement and Assignment of Leases between 3i and EverBank Commercial Finance, Inc. ("EverBank") (the "3i to EverBank Assignment Agreement"),[1] 3i physically delivered to EverBank the original Master Leases and Schedules listed above (the "Leases"). See id. ¶¶ 19, 21. Subsequently, on or about October 13, 2016, pursuant to a Master Assignment Agreement dated May 23, 2012 (the "EverBank to Signature Assignment Agreement"), id. ¶ 22, EverBank assigned the Lufkin, Greeley, West Warwick, and Lubbock leases to Signature and executed a further Assignment and Specification of Assigned Interest dated October 13, 2016, id. ¶ 23. On or about July 7, 2016, pursuant to the EverBank to Signature Assignment Agreement, EverBank assigned the Bellaire Schedule to Signature and executed a specific Assignment and Specification of Assigned

---

[1] Defendants object to the admissibility of this document arguing that "it has not been authenticated and admission would be improper under Fed. R. Evid. 1002 and the exceptions of Fed. R. Evid. 1004 have not been met." Def. 56.1 St. ¶ 19. But it is plain that this document is admissible under Rule 1004. William Wellford, a Fed. R. Civ. P. 30(b)(6) designee of EverBank, testified that the policy of EverBank is to image documents and thereafter to destroy the originals. See Deposition of William Wellford dated February 27, 2018 at 26-27, Dkt. 36-1 (testifying that EverBank has a staff of three people who, in the ordinary course of business, image all documents and destroy the hard copies typically within five business days). He identified the signature on the Master Assignment Agreement as belonging to an EverBank employee and testified that the original had been destroyed in the ordinary course. Id. at 27-29 (testifying that an EverBank employee signed the Master Purchase Agreement and that the original Agreement had been destroyed in the ordinary course).

4

Interest dated July 7, 2017. Id. ¶ 24. Signature paid EverBank in full for the Leases, id. ¶ 25, an amount exceeding one million dollars, see Affidavit of David McGowan ("McGowan Aff.") ¶¶ 16, 28, Dkt. 31-23.

In early 2017, Neighbors stopped making payments on the Leases, Pl. 56.1 St. ¶ 26, and filed suit against 3i in Texas state court, alleging, inter alia, fraud and breach of contract in connection with the Leases at issue in this case as well as 26 other 3i leases assigned to other financial institutions, see Affidavit of Thomas Gruenert ("Gruenert Aff.") ¶ 13, Dkt. 33; First Amended Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction, Dkt. 14-1. While the parties dispute the reasons for defendants' non-payment, see Reply Affirmation of Robert M. Tils ¶¶ 28-29, Dkt. 36 (asserting that the real reason defendants stopped paying was that Neighbors ran out of money); Deposition of Thomas Gruenert dated February 23, 2018 ("Gruenert Dep.") at 7-8, Dkt. 36-2 (testifying that Neighbors is engaged in 16 or so other lawsuits, including several for non-payment of real estate leases); id. at 20-21 (testifying that Neighbors' is currently being run by a Chief Restructuring Officer at the request of Neighbors' creditors); id. at 35-36 (testifying that Neighbors failed to open centers that were fully built out because Neighbors "ran out of cash"), they agree that all of the physical IT equipment covered by the Signature Leases

5

was delivered to Neighbors, see Pl. 56.1 St. ¶ 27;[2] that the IT equipment covered by the Leases is vital to Neighbors' operations, id. ¶ 29; and that the emergency room centers associated with each lease opened on time, id. ¶ 28. They also agree that Neighbors' Chief Financial Officer John Decker signed Delivery and Acceptance Certificates for each of the Leases, id. ¶ 30, attesting that all of the lease equipment was delivered as promised, and that Signature relied on these documents when taking assignment of the Leases from EverBank, id. ¶ 32.[3]

---

[2] As discussed further below, defendants contest that the Bellaire location received equipment. See Def. 56.1 St. ¶ 27. According to defendants, the location on the Bellaire Schedule "was closed at this time so there was no reason to buy or lease any equipment." Id. But the evidence cited by defendants – an excerpt from the deposition transcript of their General Counsel, Thomas Gruenert – does not support this assertion. Rather the testimony shows, even in the light most favorable to defendants, that the equipment at the old Bellaire location was moved to the new location, Gruenert Dep. at 84:18-19, Dkt. 34-6 ("the equipment was relocated"), and that, at a later date, 3i and Neighbors executed a further lease, not at issue in this case, which lease may have included equipment or services already paid for by Neighbors pursuant to the lease here. Gruenert never states that the Bellaire location in the Bellaire Schedule was closed at the time of the lease or that no equipment was ever received by Neighbors from 3i.

[3] In a scatter-shot approach, defendants submit two dozen paragraphs regarding factual issues they claim remain to be tried, see Def. 56.1 St. ¶¶ 34-57, many relating to their affirmative defenses, see, e.g., id. ¶ 48 ("Fact Issue To Be Tried (No. 15): Whether any of the five (5) Signature Agreements are unconscionable"). But in violation of Local Rule 56.1, defendants do not include any citations to the record. Moreover, none of these paragraphs asserts any factual statements that plaintiff might contest or admit. Accordingly, defendants' affirmative defenses lack any evidentiary support. While defendants improperly seek to cure these defects by providing evidentiary citations in their

6

After Signature commenced the instant action for non-payment of rent in New York state court, Neighbors removed the action to this Court on August 11, 2017, see Notice of Removal, Dkt. 1, and on September 6, Neighbors moved to dismiss Signature's complaint for lack of personal jurisdiction in New York and also moved pursuant to 28 U.S.C. § 1404 to transfer venue to the Southern District of Texas, Dkt. 12, but the Court denied both motions, see Order dated October 29, 2017, Dkt. 24; Opinion dated December 19, 2017, Dkt. 28. Plaintiff then moved for summary judgment on all fifteen counts of its complaint, defendants opposed on several grounds, and the motion was fully briefed and argued. See Def. Opp. at 1-4. The Court now considers each of defendants' arguments in turn:

## I. Valid Assignment

As an initial matter, defendants challenge plaintiff's right to enforce the Signature Leases, arguing that plaintiff has failed to establish as a matter of law a valid assignment of the Leases by 3i to EverBank. See id. at 13-14. Specifically, defendants contend that there are no business record affidavits authenticating the 3i to EverBank Assignment, that neither of the signatories have authenticated the Assignment, and that other

---

answering papers, this does not comply with Local Rule 56.1. Nevertheless, these citations will be discussed in connection with defendants' arguments below.

witnesses have either not authenticated the Assignment or cannot properly authenticate it. Id.

Not only are these arguments unavailing for the reasons discussed in footnote 1, supra, but defendants admit that the original leases were delivered by 3i to EverBank, see Def. 56.1 St. ¶ 21, and defendants continue to pay EverBank as Signature's agent on nine leases not in dispute here, implicitly acknowledging the validity of the assignment agreement they now purport to challenge, see Reply Affidavit of David McGowan ("McGowan Reply Aff.") ¶¶ 3-5, Dkt. 37. Accordingly, the Court finds that the Master Leases and the Equipment Schedules were assigned by 3i to EverBank and, thereafter, by EverBank to Signature.

## II. Breach of Contract

Defendants argue that plaintiff has failed to establish breach of contract as a matter of law. See Def. Opp. 15-17.

In order to establish breach of contract under New Jersey law, Signature must demonstrate (1) the existence of a valid contract, (2) a breach of that contract, and (3) resulting damages.[4] See RNC Sys., Inc. v. Modern Tech. Grp., Inc., 861 F. Supp. 2d 436, 445 (D.N.J. 2012) (citing Ramada Worldwide, Inc. v. Kim, No. 09 Civ. 4534, 2010 WL 2879611, at *3 (D.N.J. July 15,

---

[4] The contracts in this case are governed by New Jersey law. See Master Equipment Lease Agreement dated July 15, 2016 ("Lease") ¶ 25, Dkt. 31-24; Master Equipment Lease Agreement dated September 14, 2015 ("Lease") ¶ 25, Dkt. 31-37.

2010)). Signature also must show (4) that it complied with and performed its obligations under the contract. See Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448 (D.N.J. 1999). Defendants argue that Signature has failed to establish three of these four elements:

## A. Existence of a Valid Contract

First, defendants argue that plaintiff has failed to establish as a matter of law that the Signature Leases are valid contracts because, according to defendants, there is a genuine dispute of fact with respect to whether John Decker, the Neighbors officer who signed the leases, had the authority to bind Neighbors. See Def. Opp. at 15-16.[5]

According to defendants, Decker did not have the authority to bind Neighbors because the Leases were not reviewed by "Neighbors' legal department with the dollar figures attached and the equipment pricing filled in/attached." Id. at 24. Additionally, defendants argue, the Secretary's Certificates Relating to Incumbency and Corporate Resolutions, conferring authority on Decker to sign contracts on behalf of Neighbors, "were never discussed or presented to the board of Neighbors, and were 'a mess,' not even

---

[5] Defendants also argue that plaintiff has failed to establish that "3i acted in good faith." Def. Opp. at 15-16. But whether or not 3i acted in good faith does not bear on the validity of the contracts, only on Neighbors' obligation to perform under them. See, e.g., Sons of Thunder v. Borden, Inc., 148 N.J. 396, 421-24 (1997) (discussing the "obligation to perform in good faith").

properly reflecting the corporate structure." Id. Since there is "no evidence that anyone from 3i or Signature did any real diligence to confirm whether these" certificates were accurate, defendants conclude that this is a genuine issue of material fact precluding summary judgment. Id.

Under New Jersey law, an agent can bind his principal for such acts that are within his actual or apparent authority. New Jersey Lawyers' Fund for Client Protection v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010). Actual authority exists where "at the time of taking action" an "agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Id. Apparent authority "arises when a third party reasonably believes the actor has the authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id.

Here there is no doubt that defendants' agent John Decker – defendants' Chief Financial Officer – had both actual and apparent authority to sign the Signature Leases. Not only had Neighbors' Chief Executive Officer signed documents expressly confirming that Decker had the authority to execute the Leases, see Secretary's Certificate Relating to Incumbency and Corporate Resolutions dated September 1, 2015, Secretary's Certificate Relating to Incumbency and Corporate Resolutions dated February 2, 2016, Secretary's Certificate Relating to Incumbency and Corporate Resolutions dated

July 11, 2016, Dkt. 31-33, but Decker's title meant that he was "cloaked with the authority to enter into contracts and obtain financing on [Neighbors'] behalf." See, e.g., Eaglebank v. BR Prof'l Sports Grp., Inc., 649 Fed. Appx. 209, 213 (3d Cir. 2016).

Moreover, to the extent Decker did not have the actual authority to sign these leases, defendants point to no evidence suggesting that 3i or Signature should have known that. To the contrary, even Neighbors' employees thought that Decker was acting on behalf of the company when he signed these leases. See Deposition of Tommy Abraham dated February 19, 2018 at 76, Dkt. 34-1 (explaining that the "responsibility of finances would go to John Decker"); Deposition of John Leonard Decker IV dated February 20, 2018 ("Decker Dep.") at 76-77, Dkt. 34-2 (testifying that Neighbors' CEO approved various contested aspects of the pricing of the Leases).[6]

Indeed, Neighbors, in their Answer, admits to entering into these lease agreements. See Answer ¶¶ 11, 20, 34, 48, 62, 76, 86. Accordingly, the Court finds that Signature has demonstrated the existence of valid contracts by producing the Master Leases, see

---

[6] Defendants' argument that Decker did not follow the proper approval process and that Neighbors' Board of Directors did not carefully consider the appropriate extent of Decker's authority is inapposite. Defendants' business may have been poorly run but that does not permit defendants to selectively repudiate duly executed contracts.

11

McGowan Aff., Exs. A, N, and the five Equipment Schedules, id. Exs. B-E, O.

## B. Performance

Defendants also argue that a genuine dispute of material fact exists with respect to whether Signature performed its contractual obligations. See Def. Opp. at 16. According to defendants, neither Signature nor 3i has delivered the "M-Files" licenses or document retention services included in the Leases. Id.

Signature, however, had no obligations under the Leases to provide these services or licenses. Signature, as assignee, assumed 3i's rights but not its obligations. See Lease ¶ 21. Additionally, the Leases plainly provide that defendants' "obligations to pay Rent in full when due are absolute and unconditional and shall not be subject to any . . . defense or other right which Lessee may have or assert against" 3i. Lease ¶ 4. This clause is enforceable under New Jersey law. See, e.g., Hewlett-Packard Fin. Servs. Co. v. One2One, LLC, No. 05 Civ. 4045, 2006 WL 1281335, at *4 (D.N.J. May 8, 2006) ("[u]nder New Jersey law, a promise to make all requisite payments and not to assert any defenses to payment [is] valid and enforceable") (internal quotation omitted). Accordingly, the Court finds that Signature has established as a matter of law its performance under the contracts.

## C. Damages

12

Finally, defendants argue that Signature has failed to establish damages because Signature seeks damages "for ongoing obligations which are not being performed," its damages calculations were not timely disclosed, and there is no evidence of the amount owed for each Schedule when it went into default, the allocation of that amount between equipment and services, and the rate of default interest, late fees, taxes, and fees calculated on each of those items. See Def. Opp. at 16-17.

In fact, however, not only did Signature's complaint contain a calculation of damages (and Neighbors never sought a deposition of Signature in this case, see Plaintiff Signature Financial LLC's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment at 13, Dkt. 35), but Signature's damages are set forth in detail in the McGowan Affidavit, which outlines the sums due, default interest, late fees, and applicable taxes and fees with interest. See Pl. Mem. at 8 (citing McGowan Aff. ¶ 77). Plaintiff's rights to collect default interest at the rate of 1.5% per month, and late fees equal to 10% of the amount of the late payment or twenty dollars, whichever is greater, are set forth in the Leases. See Lease ¶¶ 19, 3. Moreover, defendants concede that plaintiff paid in full for the Signature Leases and that defendants ceased making payments on them. Accordingly, the Court finds that plaintiff has established its breach of contract claims.

**III. Affirmative Defenses**

Defendants also argue that genuine disputes of fact precluding summary judgment exist with respect to various affirmative defenses. See Verified Answer at 13-16, Dkt. 27. Defendants, however, do not support their affirmative defenses with any specific factual allegations. See Def. 56.1 St. Nor do defendants even mention their sixteenth, seventeenth, eighteenth, and twentieth affirmative defenses (the first three of which defendants formally withdraw) in their answering papers.[7] Accordingly, at the outset, the Court hereby dismisses these four defenses.

Below, the Court considers those remaining defenses that defendants contend would vitiate the lease agreements entirely (their fourth, sixth, eighth, tenth, and eleventh, and nineteenth defenses) as well as those other defenses defendants dispute in their answering papers (their second, third, fifth, seventh, ninth, twelfth, thirteenth, fourteenth, and fifteenth defenses).

## A. Fraudulent Inducement

Primarily, defendants argue that fraud in the inducement voids the Leases, including the Leases' waiver of defenses clause and hell or high water clause. See Def. Opp. at 18.

---

[7] Defendants have also withdrawn part of their fourth affirmative defense alleging duress. See Stipulation Withdrawing Defendants' Specified Affirmative Defenses, Dkt. 31-9.

To establish fraud under New Jersey law, defendants must demonstrate that there was (1) a false representation of a material presently existing or past fact; (2) made with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to that party's detriment. See RNC Sys., 861 F. Supp. 2d at 451.

"When an opponent of a contract alleges fraud in the inducement as an affirmative defense they must sustain the burden of persuasion." 720 Lex Acquisition LLC v. Guess? Retail, Inc., No. 09 Civ. 7199, 2011 WL 5039780, at *5 (S.D.N.Y. Oct. 21, 2011). "The burden of proving fraud in the inducement requires that the proof be by clear and convincing evidence." Id. Accordingly, "'at the summary judgment stage, a party must proffer enough proof to allow a reasonable jury to find by clear and convincing evidence the existence of each of the elements necessary to make out a claim for fraud in the inducement.'" Id. (quoting Century Pac., Inc. v. Hilton Hotels Corp., 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007) aff'd, 354 Fed. Appx. 496 (2d Cir. 2009)).

Defendants here do not even meet the pleading standard set forth in Rule 9(b). See De Sesto v. Slaine, 171 F. Supp. 3d 194, 200 (S.D.N.Y. 2016) (citing Fed. R. Civ. P. 9(b)). Among other things, defendants do not specify a single misrepresentation or

omission of fact in their Answer.[8] And while defendants allege as many as three misrepresentations/omissions in their papers, they marshal scant evidence that such misrepresentations/omissions were ever made and no evidence that they were relied upon or intended to defraud defendants. See Def. Opp. at 19-20.

For example, defendants argue that 3i failed to tell defendants they could not rely on price quotes provided to Neighbors' IT department. But defendants cite no facts in support of this contention in their 56.1 Statement and, in the "Facts" section of their brief, defendants assert only that "3i did not advise" Neighbors "in writing that the quotes could not be relied on." Id. at 7 (emphasis added). Indeed, uncontroverted testimony establishes that the documents with the price quotes were provided to Neighbors solely to confirm the equipment list and that 3i expressly informed Neighbors' IT department that the prices in documents were not accurate. See Deposition of John Christopher Mitchell dated February 21, 2018 at 55-56, Dkt. 31-14 (testifying that he told Abraham "these are not your prices" and that these prices have "nothing to do with the lease, this is specifically just the parts you're getting").

---

[8] See Answer at 14 ("[p]laintiff's claims fail, in whole or in part, because any alleged contract, promise, or agreement was induced by fraud, duress, or undue influence"); id. ("[p]laintiff's assignors or assignees obtained Neighbors' consent to the alleged contract, promise, or agreement through fraud, deceit, or misrepresentation").

16

Moreover, defendants' Chief Financial Officer, who was in charge of negotiating the financial terms of the leases, testified that he never saw the "quotes" and that he negotiated a top-line number with 3i based on the amount of money it cost Neighbors to outfit a center by buying equipment outright. See Decker Dep. at 96-97, Dkt. 34-2 (testifying that "if you look at the budget on the centers, you see the IT spend was about $200,000. And so to finance this, you know, it kind of - it was kind of a negotiation to come up with what kind of number can we plan on for budgetary purposes to get each center open, and the number ended up at $3,800. And that was agreeable to everybody."); id. (testifying that "the way I looked at these was this was all of the stuff that was needed to open a center at $3,800 a month").[9]

Thus, defendants' fourth and tenth affirmative defenses are improperly plead and fail as a matter of law.

**B. No Performance/No Consideration**

---

[9] Defendants also argue in their papers that the leases "contain items outside of the quotes which had not been approved by the IT department, legal, or the board of directors" and that "M-Files licenses, document retention, and services were included [] when 3i knew the M-Files project was on hold." Def. Opp. at 19. But defendants do not explain how defendants' failure to follow their own internal processes constitutes a misrepresentation or omission by 3i. Nor do defendants cite any evidence in support of their contention that 3i knew M-Files was on hold or that 3i misrepresented that M-Files were not in the leases.

17

Defendants' sixth, eighth, and eleventh affirmative defenses relate to performance and consideration. See Answer at 14-15. According to defendants, "lack of consideration and lack of performance" void the leases including their waiver and hell or high water clauses. See Def. Opp. at 17.

First, defendants argue, there are "ongoing obligations under the Schedules (including software licenses, document retention, and services), which make" Neighbors' defenses directly against Signature and not against 3i (and therefore not barred by the waiver of defenses clause). Id. But the Leases plainly provide that 3i, not Signature, has the ongoing obligation to provide services to Neighbors. See Lease ¶ 21 (providing that Signature assumed 3i's rights but not its obligations). Moreover, it is undisputed that valuable goods were provided to Neighbors by 3i pursuant to the lease agreements, which goods Neighbors continues to use and possess. See Def. 56.1 ¶ 27, 29. Only an absence of any performance at all could void the lease terms entirely (and nullify the waiver of defenses clause).

Second, defendants argue that the waiver and hell or high water clauses "do not defeat the fact that at least under the Signature Bellaire Schedule . . . the location was closed before the date of the Schedule." Def. Opp. at 20. According to defendants, no items are "being provided at that location" and

18

there is "no evidence" that "equipment, software, or services" were received from 3i in connection with the Bellaire Lease. Id.

But defendants make no factual assertions in their 56.1 Statement in support of this position. And, in their answering papers, defendants cite only three documents: the deposition of their General Counsel, Gruenert; the deposition of their former CFO, Decker; and an affidavit submitted by Gruenert. Id. at 10-11. The depositions show that Bellaire was Neighbor's original location, and that, in 2016, it was replaced by a "bigger and better" location a few blocks away. See Decker Dep. at 93, Dkt. 34-2 (testifying "we had a center - Bellaire was the original center, and then we built a new center up about three blocks or something like that"); Gruenert Dep. at 59 (testifying that 3413 South Rice Avenue, the new Bellaire location, was "bigger and better"); id. at 59 (testifying that "6030 South Rice was . . . small"); id. at 60 (testifying that "old" Bellaire is 6030 South Rice").

They also show that some of the IT equipment from the original Bellaire location went to the new Bellaire location. See id. at 58 (testifying that "6030 South Rice was closed and the same day, 5413 South Rice started to receive the equipment that was moved from 6030, and at least some of the IT and televisions at 6030 were installed at the new location"); id. at 59 (testifying that not "all" of the equipment would have been moved" as the "radiology

19

suite would have been delivered while old Bellaire was still operating" because you "have to get your radiology stuff in the building and get it set up weeks before you open").

The affidavit attests that there are "double schedules" for the Bellaire location. See Gruenert Aff. ¶ 32 (affirming that there "are double schedules for at least (5) Neighbors' locations, including Bellaire (Schedules 41343964 and 41404494)"). But it is undisputed that the Schedule 41404494 is connected with the new Bellaire location and is the subject of a separate litigation against a different assignee. See Gruenert Dep. at 84 (testifying that Lease 4494 was not assigned to Signature); id. (testifying that "the invoicing and payments under the old Bellaire schedule," which was assigned to Signature, "did not end after old Bellaire closed" because the "equipment was relocated and" the new Bellaire schedule was signed); id. at 85 (testifying that he "cannot" have "any knowledge of any reason why old Bellaire would need a suite of equipment . . . when it was closing and the location was moving and new location was started up"); id. at 86-87 (testifying that the new Bellaire lease is the subject of a different litigation with a different assignee).

The Bellaire Schedule at issue in this case was executed on April 22, 2016 and began on May 1, 2016. See Equipment Schedule dated May 1, 2016, Dkt. 31-38. According to Decker, the first Bellaire Schedule is "probably for the new Bellaire." See Decker

Dep. at 92-94 ("when we first started doing business with 3i, our businesses were not mature enough that our original company that we were basically financing through was actually Bellaire because it was five years old. So there maybe something – paperwork somewhere that says Bellaire was the buyer, but that's not where equipment would have went"); id. ("as far as these type of leases, these were for new centers. So this one right here I expect is probably for the new Bellaire. There would be no reason to go to the old Bellaire").

The second Bellaire lease, which defendants did not put into evidence, begins August 15, 2016 and was executed on July 27. Equipment Schedule dated August 15, 2016. This lease was emailed to the Court at the Court's request. See Transcript dated April 16, 2018 at 2. Unlike the first lease, which is for $3,800 per month, the second lease is for $4,581.88. Aside from the fact that both leases include M-Files licenses, defendants point to no other duplication between the two leases which appear to include dozens of different pieces of IT equipment. While no Certificate of Acceptance is in evidence with regard to the second schedule, a duly executed Certificate of Acceptance is before the Court with respect to the first schedule. See Delivery and Acceptance Certificate dated April 22, 2016, Dkt. 31-32 (signed by John Decker, CFO, certifying that the equipment and other property referred to in the Bellaire Schedule was delivered, inspected, and

21

accepted for purposes of the agreement). Defendants do not contest that John Decker, their CFO, signed this certificate. See Def. 56.1 St. ¶ 30 ("not contested").

On this record, the Court finds that defendants have failed to identify evidence sufficient to preclude summary judgment on their affirmative defense of no performance (and/or no consideration) with respect to the Bellaire Schedule. Not only is defendants' contention that there was no performance speculative, it is contradicted by a document signed by their CFO at the time, as well as by the testimony of their current General Counsel. See Gruenert Dep. at 84 (testifying that the "invoicing and the payments under the old Bellaire schedule, which I believe was assigned to Signature, did not end after old Bellaire closed" and that the "equipment was relocated") (emphasis added).[10] The Court therefore dismisses defendants' sixth, eighth, and eleventh affirmative defenses.

## C. Other Defenses

None of defendants remaining affirmative defenses, see Answer at 13-16, is sufficient to defeat plaintiff's motion:

---

[10] It may be that there was no performance with respect to the second Bellaire schedule, i.e., that no additional equipment was provided pursuant to that agreement or that Neighbors was billed again for equipment already provided pursuant to the initial Bellaire lease here, but that question is not before the Court and does not preclude summary judgment on Counts XIII, XIV, and XV.

Defendants' first affirmative defense - failure to state a claim - fails for the reasons set forth in Part II, supra. Defendants' second affirmative defense - lack of personal and subject matter jurisdiction - fails for the reasons set forth in the Court's Opinion dated December 19, 2017, see Dkt. 28, as well as because there is complete diversity between the parties and the matter in controversy exceeds $75,000, see Notice of Removal, Dkt. 1. Defendants' third affirmative defense - improper venue - also fails for the reasons set forth in the Court's Opinion dated December 19, 2017.[11] See Dkt. 28.

Defendants' fifth, seventh, ninth, twelfth, thirteenth, and fifteenth affirmative defenses - no meeting of the minds, no

---

[11] Defendants argue that Paragraph 25 of the Master Leases, which plaintiff relies upon to establish jurisdiction and venue in this District, is a "permissive" venue clause, and accordingly should not be enforced. See Def. Opp. at 12-13. Instead, defendants seek dismissal in favor of a related action in Texas or transfer to the U.S. District Court for the Southern District of Texas. Id. But the Court already considered this argument and rejected it. See Opinion dated December 19, 2017 at 17-18, Dkt. 28 (holding that Paragraph 25 "is a mandatory consent to jurisdiction clause"); id. at 18 (noting that "[al]though the clause allows Signature to choose between" various venues, "this does not make [the clause] 'permissive,' as defendants argue . . . because [the clause] still requires the lessee [defendants] to submit to jurisdiction [and venue] in whichever forum Signature chooses"). Defendants now reemphasize that Paragraph 25 states that matters arising under the leases "may be adjudicated" in New York. See Def. Opp. at 13. But defendants ignore the end of the sentence, which states: "all at the sole discretion of the lessor." Lease ¶ 25.

23

agreement on material terms,[12] unconscionability, inferior goods, no authority,[13] and the parol evidence rule[14] - are barred by the waiver of defenses in defendants' leases. Lease ¶ 21.[15]

Defendants' fourteenth affirmative defense - failure to mitigate - fails because defendants cite no supporting facts in their 56.1 Statement or in their brief. Nor do defendants cite any case (or distinguish the contrary authority cited by plaintiff) in

---

[12] For the reasons season forth in Part II, supra, defendants' fifth and sixth defenses fail because the duly executed agreements plainly evidence meeting of the minds and agreement on material terms.

[13] For the reasons set forth in Part II, supra, defendants' thirteenth defense also fails because John Decker had authority to sign the leases as a matter of law.

[14] Even if defendants' parol evidence defense were established, defendants do not specify what testimony would be excluded. See Def. Opp. at 24-25. Moreover, defendants' arguments on this point only relate to whether there was performance by 3i not whether there was performance by Signature. Id. Accordingly, this defense is unavailing against Signature.

[15] This term provides in relevant part that Signature, "will not be subject to any claim, defense or set-off" that Neighbors might have against the original lessor, 3i. This term is enforceable. See East Brunswick Sewerage Authority v. East Mill Associates, Inc., 365 N.J. Super. 120, 125 (App. Div. 2004) (internal citations omitted) ("[w]hen the terms of a contract are clear, the court must enforce them as written") (citations omitted); id. (a "court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument"); AT & T Credit Corp. v. Transglobal Telecom All., Inc., 966 F. Supp. 299, 302 (D.N.J. 1997), aff'd sub nom. AT&T Credit Corp. v. Transglobal Telecom All., Inc., 261 F.3d 490 (3d Cir. 2001) ("[u]nder New Jersey law, a promise to make all requisite payments and not to assert any defenses to payment are valid and enforceable").

24

support of their position that a lender has a duty to accept partial payment for a debt or else forfeit their claim to interests and fees on that portion of the debt.

Accordingly, the Court dismisses defendants' remaining affirmative defenses and finds liability against defendants on all fifteen counts of plaintiff's complaint.

## IV. **Remedies**

In connection with Counts I, IV, VII, X, and XIII, plaintiff seeks judgments against: Neighbors Global in the amount of $1,039,862; Lufkin in the amount of $264,224; Greeley in the amount of $258,546; West Warwick in the amount of $258,546; Lubbock in the amount of $258,546; Legacy Holdings in the amount of $215,891; Health Systems in the amount of $215,891; and Bellaire in the amount of $215,891. See McGowan Aff. ¶ 78. In connection with Counts III, VI, IX, XII, and XV, plaintiff seeks fees and costs pursuant to Paragraph 19 of the Master Leases. See id. ¶ 79; Pl. Mem. at 31. In connection with Counts II, V, VIII, XI, and XIV, plaintiff seeks possession of the IT equipment covered by the leases. See id. at 30-31.

Defendants oppose, arguing that plaintiff has failed to establish its damages and is not entitled to fees, costs, or possession. See Def. Opp. at 16-17, 25. According to defendants, plaintiff seeks damages for "ongoing obligations which are not being performed (software, document retention, and services),"

25

Def. Opp. at 16-17, and plaintiff's "method of damage calculation" was not timely disclosed. Id. at 17. Defendants also argue that plaintiff is not entitled to possession of the lease equipment because defendants offered to pay up front for the equipment that they did receive and their offer was rejected. Id. at 25.

With regard to Counts I, IV, VII, X, and XIII, plaintiff pled its damages in its complaint and submitted evidence of its damages along with its moving papers. See Aff. Of David McGowan ¶¶ 77-78, Dkt. 31-23. Defendants sought no discovery on damages and have submitted no evidence to controvert plaintiff's calculations or to support alternative calculations. Accordingly, the Court finds that plaintiff is entitled to its damages as set forth in the McGowan Affidavit.

With regard to Counts III, VI, IX, XII, and XV, Paragraph 19 of the Leases plainly states that Neighbors "agrees to reimburse Lessor [Signature] on demand for any and all costs and expenses incurred by Lessor in enforcing its right and remedies hereunder following the occurrence of a Default, including, without limitation, reasonable attorney's fees, the costs of repossession, storage, insuring, re-letting, selling and disposing of any and all Equipment, [and] all prejudgment and post-judgment actions taken by Lessor." Lease ¶ 19. Defendants cite no law or reason why the Court should not enforce these terms. Accordingly, the Court

26

awards Signature costs and expenses including reasonable attorneys' fees.

With regard to Counts II, V, VIII, XI, and XIV, Paragraph 19 of defendants' leases permit the Lessor to "peacefully repossess the Equipment without court order" in the event of default by Neighbors. Id. Defendants make no legally cognizable argument as to why plaintiff should be denied this relief. See Def. Opp. at 25-29.

## V. Conclusion

For the reasons stated above, the Court hereby grants plaintiff's motion for summary judgment finding Neighbors Global and Lufkin jointly and severally liable on Count I in the amount of $264,224; Neighbors Global and Lufkin liable on Count II; Neighbors Global and Lufkin liable on Count III; Neighbors Global and Greeley jointly and severally liable on Count IV in the amount of $258,546; Neighbors Global and Greeley liable on Count V; Neighbors Global and Greeley liable on Count VI; Neighbors Global and West Warwick jointly and severally liable on Count VII in the amount of $258,546; Neighbors Global and West Warwick liable on Count VIII; Neighbors Global and West Warwick liable on Count IX; Neighbors Global and Lubbock jointly and severally liable on Count X in the amount of $258,546; Neighbors Global and Lubbock liable on Count XI; Neighbors Global and Lubbock liable on Count XII; Neighbors Health, Legacy Holdings, and Bellaire jointly and

severally liable on Count XIII in the amount of $215,891; Neighbors Health, Legacy Holdings, and Bellaire liable on Count XIV; and Neighbors Health, Legacy Holdings, and Bellaire liable on Count XV. The Court further awards plaintiff its costs and fees in connection with Counts III, VI, IX, XII, and XV, and permits peaceable repossession of the lease equipment pursuant to Counts II, V, VIII, XI, and XIV.

Plaintiff is directed to submit to the Court by May 14, 2018 a proposed Final Judgment and a specification of its recoverable fees and costs through May 11, 2018, accompanied by appropriate "break-downs" for same. Defendants, by no later than May 21, 2018, may file any objections to the amounts of fees and costs and/or to the form of the Final Judgment.

The Clerk is instructed to close docket entry number 31.

Dated:    New York, NY
          May _8_, 2018

JED S. RAKOFF, U.S.D.J.